# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LAURA C. SPILLER, | : | Case No. 3:11-cv-94 |
| Plaintiff, | | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and §1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Laura C. Spiller ("Plaintiff") not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 12), the Commissioner's Memorandum in Opposition (doc. 13), Plaintiff's Reply (doc. 14), and the administrative record.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed her applications for DIB and SSI on August 31, 2005, asserting that she has been under a "disability" since August 24, 1998. *See* Administrative Transcript ("Tr.") 56-60, 424-27. Plaintiff claims she is disabled due to ocular histoplasmosis, stress, depression,

fibromyalgia, fatigue, migraines, back and neck pain, degenerative disc disease, IBS (irritable bowel syndrome), reflux, ulcers, memory loss, arthritis in her ankles, knees and hips, vertigo, TMJ (temporomandibular joint disorder), and a lack of depth perception. Tr. 68.

Following initial administrative denials of her application, Plaintiff received a hearing before ALJ Thaddeus Armstead, Sr. on June 23, 2008. Tr. 439-93. On November 19, 2008, ALJ Armstead issued a written decision, concluding that Plaintiff could perform a limited range of light work and was not "disabled." Tr. 20-31.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2003.

2. The claimant has not engaged in substantial gainful activity since August 24, 1998, the alleged onset date (20 CFR 404.1571, *et seq.*, and 416.971, *et seq.*).

3. The claimant has the following severe impairments: ocular histoplasmosis; fibromyalgia; mild degenerative disc disease; a history of irritable bowel syndrome associated with fibromyalgia; depression; and a history of paranoid personality disorder with borderline features (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she should not climb ladders, ropes, or scaffolds or perform commercial driving as a job task[]; should not perform more than occasional stooping, crouching, crawling, kneeling, or climbing; should not perform tasks relying on reading fine print or job tasks relying on peripheral vision or other demands of the left eye; and is further limited to performing simple, repetitive tasks that do not involve fast pace, strict time standards, or production quotas.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on May 23,1964 and was 34 years old, which is defined as a 30 younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 24, 1998, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 22-31.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. Tr. 6-8. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this appeal on March 24, 2011. Doc. 1.

**B.    Administrative Hearing**

    **1.    Plaintiff**

At the administrative hearing, Plaintiff testified that she stopped working in June 1998 as a result of her fibromyalgia, degenerative disc disease, and ocular histoplasmosis. Tr. 456-57. Plaintiff testified that her IBS, depression, and anxiety have also precluded her from working

since then. Tr. 458-59. (Before that time, Plaintiff worked as a switchboard operator/desk clerk at a local hospital. Tr. 457.)

Plaintiff testified that she lost her center vision due to her ocular histoplasmosis, and that it cannot be corrected, thus making it difficult for her to read. Tr. 453.

When asked about her fibromyalgia pain, Plaintiff responded that it is "all over, mainly from the neck down. I have a lot of problems with my hips, my back, my neck, my shoulder blades, knees, and my ankles and my feet." *Id.* Plaintiff further testified that she has "good" days and "bad" days. Tr. 462. On a "bad" day, she spends most of the time lying on her bed or couch with heating pads. Tr. 463.

Plaintiff also reported she suffers from fatigue and other symptoms related to her IBS. *Id.* She does not get much sleep at night, making it difficult for her to function and think during the day. Tr. 464.

Plaintiff rated her back and neck pain as a nine to ten on most days. Tr. 464. She has undergone physical therapy for the pain – the last time in 2006 – and also takes Vicodin and over-the-counter medication. Tr. 464-65. When her back "goes out," she uses a back brace and cane. *Id.*

With respect to her depression, Plaintiff testified that she has crying spells almost every day. Tr. 466. She testified that she is not able to concentrate on a single task for more than several minutes at a time. *Id.* She indicated that she did not handle stress well, and is nervous around other people. *Id.*

### 2. Medical Expert

Hershel Goren, M.D., a board certified neurologist, testified as the medical expert ("ME") at the administrative hearing. Tr. 467-85. Dr. Goren reported that he had training in

treating fibromyalgia, disc disease, eye problems including histoplasmosis, and IBS. Tr. 468-69. Dr. Goren also reported that he had training and practical experience in psychiatry, although he is not board certified in that discipline. Tr. 469.

Dr. Goren testified that, based on his review of Plaintiff's medical records and testimony, Plaintiff's impairments do not meet or equal any Listing, either individually or in combination. Tr. 470. Dr. Goren reported that "the treatment for fibromyalgia is exercise, so if claimant's problem is fibromyalgia, not only should she not be restricted, she should be exercising and should be building up her exercise to the point where she's jogging." Tr. 471.

Dr. Goren further testified that he did not believe Plaintiff had significant mental limitations, finding Plaintiff's treating psychologist's disability opinion conclusory. *Id.*

Dr. Goren opined that Plaintiff does not have any exertional restrictions. Tr. 474. With respect to Plaintiff's pain allegations, he repeated that Plaintiff's pain caused by fibromyalgia "gets better with exercise." Tr. 474-75.

Dr. Goren opined that Plaintiff should be restricted to no climbing of ladders, ropes or scaffolds; no reading of fine print; no exposure to moving machinery or unprotected heights; no commercial driving; and no high-production quotas (*e.g.,* no assembly line work). Tr. 476-78.

### 3. Vocational Expert

Charlotta Ewers, a vocational expert ("VE"), also testified at the hearing. Tr. 485-91. The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. *See id.* Based on Plaintiff's RFC, age, education, and work experience, the VE testified there were 5,000 light exertional jobs in the regional economy which Plaintiff could perform. Tr. 488.

## II. APPLICABLE LAW

### A. Standard of Review

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the Commissioner has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both

"medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* A claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and RFC, can he or she perform other work, that is available in the national economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in the parties' briefs, *see* doc. 12 at PageID 43-50; doc. 13 at PageID 63-68, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

In her Statement of Errors, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. *See* doc. 12 at PageID 51-55. Specifically, she asserts that the ALJ erroneously disregarded the medical opinion of Dr. Kraus, Plaintiff's treating psychologist, and instead relied on the medical opinion of the medical expert, who did not review Dr. Kraus's treatment notes. *See id.* Second, Plaintiff argues that the ALJ erroneously disregarded the severity of her pain and other symptoms. *See id.* at PageID 56-60.

### A. Substantial Evidence Supports the ALJ's Decision to Not Give Controlling or Deferential Weight to Dr. Kraus

George Kraus, Ph.D. is a clinical psychologist who began treating Plaintiff in August 2005, when Plaintiff's primary care physician referred her for a psychological evaluation. Tr. 290. At that time, Dr. Kraus determined that Plaintiff qualified for "Major Depression, recurrent, moderate severity." *Id.* He continued to treat her through April 2008. *See* tr. 311-423. In 2005 and 2006, Plaintiff saw Dr. Kraus once a week. *See* tr. 332-404. However, after Plaintiff's insurance benefits were terminated in January 2007 (following her divorce from her husband), she could only afford to see Dr. Kraus monthly from that point forward. *See* tr. 294.

Dr. Kraus completed a questionnaire from the Bureau of Disability Determination with respect to Plaintiff a few months after treating her, in October 2005. Tr. 287-89. He reported that Plaintiff suffers from labile affect[1], sleep difficulty, weight loss, decreased concentration, fatigue, sadness, and anxiousness. Tr. 288. He further noted that Plaintiff is fully oriented; does not have psychotic processes; and does not have suicidal/homicidal ideation. *Id.* Dr. Kraus opined that Plaintiff has no significant restrictions in her daily activities or her ability to care for herself; nor does she have significant deficits in social interaction. *Id.* Finally, he noted that Plaintiff's ability to tolerate stress is "poor." Tr. 289.

---

[1] Labile means "free and uncontrolled mood or behavioral expression of the emotions." *Stedman's Medical Dictionary* 1037 (28th ed. 2006).

The record also contains several letters from Dr. Kraus in which he discusses his treatment of Plaintiff and her current mental health status. Notably, the three letters -- dated December 1, 2006, September 21, 2007, and June 2, 2008 -- contain similar language. Tr. 290-91, 294-95, 306-07. The June 2008, which is the most comprehensive letter, provides in relevant part:

> When I began seeing [Plaintiff] she was suffering from considerable anxiety and depression, was consistently tearful and exhibited considerable feelings of helplessness and dependency in the sessions. In the course of her treatment, however, she has made good progress and now much less frequently exhibits the acute symptoms prompting her initial referral. . . .
> She is able to generally function on a satisfactory basis punctuated by brief periods where she has felt cheated, misunderstood, and disillusioned by relationships with others. The basis for these feelings resulted from considerable tension in her 22-year marriage, which came to an end in August 2006. [Plaintiff] is under a tremendous amount of stress dealing with exceedingly difficult responsibilities parenting her developmentally disabled child. [Plaintiff] also struggles with more longstanding issues of self-esteem.
> During the course of her treatment, [Plaintiff] has made good progress in managing her stress and has begun to examine more longstanding issues of fearfulness and self-esteem. . . .
>
> . . .
>
> [Plaintiff] is trying to procure Social Security Disability and other benefits on her own and on her daughter's behalf. While she appears to be well organized in these pursuits, her efforts lead to considerable distress. As well as she does with these activities, however [Plaintiff] struggles mightily to maintain adequate levels of effectiveness – this being caused by the significant stress of caretaking for a child who is not only developmentally disabled, but who is also experiencing escalating psychiatric and behavioral problems. In this sense, [Plaintiff]'s ability to maintain attention and concentration is markedly affected by her depressive condition, as is her ability to understand, remember, and follow instructions, and her ability to withstand the stress and pressures of day-to-day work activity. Her psychological difficulties are also exacerbated by her fibromyalgia and ocular histoplasmosis. Because of my role as her psychotherapist, though, I have not performed cognitive tests to substantiate my conclusions. These tests would certainly be recommended to further support her Social Security disability appeal.

Tr. 306-07.

Dr. Kraus did not complete any other State agency forms or questionnaires in which he found her disabled. Thus, this letter is Dr. Kraus's disability finding to which, Plaintiff argues, the ALJ should have given controlling or deferential weight. *See* doc. 12 at PageID 52-53.

The ALJ adequately considered Dr. Kraus's medical opinion and treatment notes in his decision, and reasonably concluded that it was not entitled to controlling or deferential weight. The ALJ stated:

> The record also contains the opinion of Dr. Kraus, the claimant's therapist, who reported on June 2, 2008, that the claimant exhibited marked limitations in her ability to maintain attention and concentration; understand, remember, and follow instructions; and withstand the stress and pressures of day-to-day work activity. However, Dr. Kraus also attributed these restrictions to the difficulties related to tensions in her marriage, taking care of a child with a developmental disability and psychiatric and behavioral problems. While the duties required of the claimant in taking care of her daughter are certainly demanding, they are not a basis to find that the claimant is disabled within the meaning of the Social Security Act. Disability is based on the functional limitations imposed by medically-determinable impairments, not the demands of childcare or other factors beyond the functional limitations imposed by medically determinable impairments. Dr. Kraus' report and his treatment records confirm that the claimant had made good progress during her treatment and exhibits has reported acute symptoms much less frequently. Dr. Kraus' treatment notes also demonstrate that the claimant struggled with her divorce, but that issue has passed and there is no indication anywhere in the record that the claimant experiences difficulty relating to others. Contrary to the marked restriction stated by Dr. Kraus (while also mentioning moderate severity at initiation of treatment), records alternatively document a psychological functioning level past and present of limited severity as noted by GAF's of 69 and 65, the latter rendered as of April 2008, prior to the June 2, 2008 report by Dr. Kraus. While the claimant may experience some difficulty in the areas set forth by Dr. Kraus, treatment continue[s] to document improvement and the reasonable degree of difficulty maintaining attention and tolerating work stress are fully taken into account by the restrictions set forth above. Accordingly, Dr. Kraus' opinion is not entitled to controlling or deferential weight as to the issue of disability, but it has been given significant weight to the extent supported by the evidence of record, including his own treatment notes concerning the claimant's ability to handle more than simple, repetitive tasks or significant work stressors.

Tr. 29.

The Court finds that the ALJ reasonably decided to not give controlling weight to Dr. Kraus's disability finding as set forth in the June 2, 2008 letter. As a general matter, an adequately supported treating source opinion is entitled to great weight. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). However, a treating source's broad, conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). "'It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakely*, 581 F.3d at 406 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). "If the ALJ does not accord controlling weight to a treating source, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.*

The ALJ's reasons -- for not giving Dr. Kraus's opinion controlling or substantial weight -- are supported by substantial evidence. First, Dr. Kraus's letter is internally inconsistent: After noting that Plaintiff has made good progress; is generally able to function on a satisfactory basis; and is an attentive, patient and good parent; Dr. Kraus then concludes that Plaintiff nonetheless has marked restrictions in three mental functional abilities. *See* tr. 306-07. Second, there is no objective medical evidence supporting Dr. Kraus's opinion. Indeed, Dr. Kraus admits in the letter that he has "not performed cognitive tests to substantiate [his] conclusions," and

recommends that Plaintiff obtain such tests. Tr. 307. Third, Dr. Kraus's disability finding is inconsistent with his treatment notes. Dr. Kraus repeatedly notes Plaintiff's "good progress" in his treatment records. *See* tr. 311-423. Further, the treatment notes focus on Plaintiff's stress and anxiety caused by her divorce and childcare responsibilities, rather than documenting Plaintiff's mental functional limitations. *See id.*

Therefore, the Court finds Plaintiff's first assignment of error is unpersuasive. The ALJ provided good reasons, supported by substantial evidence, to not give controlling or deferential weight to Dr. Kraus's opinion. Accordingly, the ALJ reasonably acted within the acceptable "zone of choice" and should therefore be affirmed. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001).

### B. The ALJ Did Not Err in Evaluating Plaintiff's Pain

In Plaintiff's second assignment of error, she asserts that the ALJ erroneously evaluated her pain and other symptoms. *See* doc. 12 at PageID 56-59. Plaintiff specifically takes issue with the fact that the ALJ did not believe Plaintiff's her fibromyalgia caused her disabling pain. *See id.*

Here, where Plaintiff claims the *symptoms* of her fibromyalgia, and not the condition itself, renders her disabled, a two-step process is used in evaluating her complaints of disabling pain: (1) the ALJ must determine whether there is "an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) if so, the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities." *See* 20 C.F.R. §§ 404.1529, 416.929; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

Contrary to Plaintiff's argument, the ALJ did not reject Plaintiff's claims of disabling pain from fibromyalgia based solely on a lack of objective medical evidence. *See* doc. 13 at PageID 72-73. Rather, the ALJ stated, "[Plaintiff] testified that she experiences constant, severe pain that never goes away, but these allegations are not supported by either objective evidence or a severe anatomical abnormality, *clinical findings supporting significant functional impairment, or other documented history of restrictive functioning due to severity level of pain*." Tr. 28 (emphasis added). Thus, the ALJ looked not only for objective test results, but also for clinical findings or medical opinions to support Plaintiff's claims of disabling pain, and found none.

The ALJ's conclusion is supported by substantial evidence. Plaintiff has not presented any clinical findings or medical records showing that her fibromyalgia related pain is disabling. To the contrary, though Plaintiff's primary care physician, Dr. Moore, opined that Plaintiff could not do physical work, he stated it was "because of her back and hips," without mention of any fibromyalgia pain. Tr. 308. Further, Dr. Hawkins, a rheumatologist, diagnosed Plaintiff with fibromyalgia, but did not impose any work restrictions, and instead recommended that Plaintiff do aerobic exercise and strength training. Tr. 232. In addition, Dr. Goren, the Medical Expert, opined that Plaintiff's fibromyalgia did not restrict her work exertional abilities. *See* tr. 476-77.

Finally, the Court notes that the ALJ did indeed account for Plaintiff's fibromyalgia diagnosis by limiting her to light work and adding postural restrictions to her RFC. *See* tr. 28.

In sum, the Court finds that the ALJ reasonably evaluated Plaintiff's subjective complaints, and determined that her fibromyalgia related pain did not render her disabled. *See* 20 C.F.R. §§ 404.1529, 416.929.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability finding be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED**.

July 17, 2012                                          **s/Michael J. Newman**
                                                       United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).